IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**JERRY FREDDIE,**

    Plaintiff,

v.                                          Case No. 09-CV-0144 JEC/RLP

**MARTEN TRANSPORT, LTD. and
KAREN M. SCHILLER,**

    Defendants.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on *Defendants' Motion to Dismiss Plaintiff's Complaint for Lying in Discovery* (Doc. 56), filed January 13, 2010 ("Motion"). Having reviewed the parties' submissions and held hearings on February 17, 2010 and March 15, 2010, the Court is well informed in the premises and will GRANT the Motion.

**I.    BACKGROUND**

Plaintiff Jerry Freddie originally filed this lawsuit on October 8, 2008 in New Mexico's Thirteenth Judicial District. His allegations are for negligence and negligence per se relating to a car accident on Interstate 40, where Defendant Schiller, who was driving a tractor-trailer owned by Defendant Marten Transport, Ltd., allegedly hit Plaintiff's vehicle and pushed it off the road. *Notice of Removal* at Ex. 2, ¶ 6. As damages, Plaintiff claims past and future medical expenses, loss of income and earning ability, emotional distress, and pain and suffering. *Id.* at ¶¶ 16, 20 & 32. The accident allegedly occurred November 29, 2006. *Motion* at ¶ 2.

In written discovery, Plaintiff elaborated on his injuries, stating that he injured his neck and back; developed pain in his shoulders, arms, and hands; and has lower extremity problems

with balance and leg strength. *Motion* at Ex. A, p. 8. He also complained of dizziness, problems sleeping, and sight and memory difficulties. *Id.* at Ex. A, p. 9. In his deposition, taken December 10, 2009, Plaintiff testified he had never had a head injury as a result of a car accident. *Motion* at Ex. B, p. 82. Although he acknowledged being involved in two car accidents in addition to the one at issue in this case—one in the 1970s and one in the 1980s—Plaintiff testified the November 29, 2006 car accident was the only time he had ever injured his head. *Id.* Sometime in the 1970s, Plaintiff said he injured his neck, on the right side below the base of his skull, falling off a horse at a rodeo school. *Motion* at Ex. B., p. 84. But he denied any head injury as a result of his rodeo fall in the 1970s. *Id.*

Sometime after Plaintiff's deposition, Defendants obtained a Dilkon, Arizona police report dated February 15, 2003, detailing a previously undisclosed one-car rollover accident involving Plaintiff ("rollover"). *Motion* at Ex. G. The report identifies Jerry Freddie as the owner and driver of the vehicle. *Id.* at Ex. G-1.

> The reporting person identified himself as Jerry Freddie. He also identified himself as being the driver of the motor vehicle. In his verbal statement he said, I was on my way to the office and I had some papers on the seat. They started falling off so I reached for it and went off the road.
> ...
> The driver of the motor vehicle was Jerry Freddie with a valid Arizona operator license number of 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. The driver sustained no injuries to the motor vehicle accident. He did mention at the scene he was a little sore across the shoulders and across his back.

*Motion* at Ex. G-3.

Defendants also obtained a medical record belonging to Plaintiff dated December 15, 2005, which notes, "[t]he patient does recall a time when he had a fairly severe head and neck

injury.  He does have persistent neck pain, headaches."  *Motion* at Ex. H.

Based on the Dilkon, Arizona police report and 2005 medical record, Defendants contend that Plaintiff lied in his deposition and interrogatory responses when he indicated no prior head injuries and no additional car accidents.  *Motion* at 2-3.  As a result of Plaintiff's alleged misrepresentations, Defendants claim that his Complaint should be dismissed in its entirety with prejudice.  *Id.* at 3.

Plaintiff's response to the Motion denies any wrongful conduct in discovery and explains that the 2005 medical record refers to the neck injury Plaintiff received in the 1970s at a rodeo school.  *Jerry Freddie's Response to Motion to Dismiss for Allegedly "Lying in Discovery"* (Doc. 64), filed February 3, 2010, ("Resp.") at 3.  Plaintiff also purports to explain the Dilkon police report, attaching affidavits from Plaintiff and his son, wherein both claim that Plaintiff's son Gary Freddie was the driver of the truck who was involved in the February 2003 rollover.  *Id.* at 2 & Exs. 1 & 2.  Because it was Plaintiff and not his son who actually made the police report, Plaintiff suggests the police officer making the report may have been confused.  *Id.* at 3 (noting that the officer did not file the report right away and that the delay "is perhaps why he incorrectly identified the driver, whose name, 'Gary' [and] sounds similar to 'Jerry'").

Defendants cast doubt on Plaintiff's explanation for the car accident in their Reply brief, attaching medical records dated February 28, 2003, wherein it is revealed that Jerry Freddie, age 63, sought medical treatment for a rollover motor vehicle accident occurring a week earlier. *Defs.' Reply to Pl.'s Response to Defs.' Motion to Dismiss Pl.'s Complt. for Lying in Discovery* (Doc. 67), filed February 12, 2010, ("Reply") at Ex. I.  In these medical records, Plaintiff indicates he feels pain in his "lower back, neck right side, between shoulder blade, arms/legs."

3

*Id.* Plaintiff also complains of headaches and pain in his chest, arms, and legs. *Id.* The chiropractor who treated Plaintiff further notes that he complained of occasional lightheadedness, increased fatigue, and difficulty reading fine print since the car accident. *Id.* at Ex. J. The injuries Plaintiff describes in the February 2003 medical records are substantially similar to those alleged in the present lawsuit. Additional documents Defendants obtained from Plaintiff's insurer for the February 2003 rollover indicate that Plaintiff represented himself as the driver and injured party in that accident. *Id.* at Ex. P. Moreover, Plaintiff denied any subsequent accidents or injuries in a recorded statement taken by his insurer for the 2003 rollover on December 28, 2006. *Id.* at Ex. N. This is significant given that the accident at issue in this case occurred about a month before the recorded statement, on November 29, 2006.

At the first hearing on Defendants' Motion, set February 17, 2010, Plaintiff's attorneys informed the Court that they had not been able to reach Plaintiff to ask him about the February 28, 2003 medical records and the insurance documents associated with the 2003 rollover. *Hr'g Transcript* at 9. Thereafter, Plaintiff's counsel filed a *Report to the Court* (Doc. 75), indicating that Plaintiff would stand by his original affidavit swearing that it was his son and not himself who was involved in the 2003 rollover. *Report* at ¶ 1. Plaintiff's attorneys further represented that "with respect to questions related to statements he may have made to a chiropractor and other persons in 2003, it is likely he will refuse to answer some questions on the grounds that he is protected from answering such questions under the Fifth Amendment to the United States Constitution." *Id.* at ¶ 3. Indeed, Plaintiff invoked the Fifth Amendment at the second hearing on Defendant's Motion, held March 15, 2010, when asked whether he visited a chiropractor on February 28, 2003 and whether he advised the chiropractor that he had been in a rollover

accident a week earlier. Defendant also testified that it was his son Gary, and not himself, who was involved in the February 2003 rollover.

## II.     LEGAL STANDARD

"A district court has inherent equitable powers to impose the sanction of dismissal with prejudice because of abusive litigation practices during discovery." *Garcia v. Berkshire Life Ins. Co.*, 569 F.3d 1174, 1179 (10th Cir. 2009). The following factors should be evaluated when determining whether dismissal is an appropriate sanction: (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for non-compliance; and (5) the efficacy of lesser sanctions. *Id.* Moreover, due process requires some evidence of "willfulness, bad faith, or [some] fault of petitioner rather than inability to comply" in order to support dismissal as a sanction. *Id.* (quoting *Archibeque v. Atchison, Topeka & Santa Fe Ry. Co.*, 70 F.3d 1172, 1174 (10th Cir.1995)).

Dismissal is perhaps particularly justified where one party has submitted falsified evidence.

> The submission of falsified evidence substantially prejudices an opposing party by casting doubt on the veracity of all of the culpable party's submissions throughout litigation. The prejudiced party is forced either to attempt independent corroboration of each submission, at substantial expense of time and money, or to accept the real possibility that those discovery documents submitted by the opposing party are inaccurate. Nor is the exclusion of the fabricated evidence always enough to deter discovery misconduct. "Litigants would infer that they have everything to gain, and nothing to lose, if manufactured evidence merely is excluded while their lawsuit continues." *Pope v. Federal Express Corp.*, 138 F.R.D. 675, 683 (W.D.Mo.1990).

*Garcia* at 1180.

The Tenth Circuit has upheld dismissal as a sanction in less egregious cases. *Id.* For instance, dismissal was upheld as a sanction for the plaintiff's failure to attend his scheduled deposition, even where the plaintiff had requested that the deposition be delayed so that he could attend a business meeting in New York in order to "save his business from bankruptcy." *Ehrenhaus v. Reynolds*, 965 F.2d 916, 919 (10th Cir. 1992). In *Archibeque*, the Tenth Circuit upheld dismissal as a sanction for the plaintiff's failure to disclose information about prior injuries, even though the plaintiff characterized her omissions as "a mere oversight." *Archibeque*, 70 F.3d at 1175. Like Plaintiff in the present case, the plaintiff in *Archibeque* responded to discovery but failed to identify any treatment for injuries similar to those alleged in the lawsuit. *Id.* at 1173. The defendant in *Archibeque* later learned that the plaintiff had sought and received treatment for the same type of injuries alleged in the lawsuit for over ten years prior to the accident at issue in that case. *Id.* Not only this, but the plaintiff in *Archibeque* had sought such treatment on over 15 occasions and from at least six different care providers. *Id.*

## III.   DISCUSSION

### A.   Plaintiff is Culpable of Withholding Highly Relevant Information.

Even if the Court were to believe Plaintiff's testimony that it was his son and not himself who was involved in the 2003 rollover, Plaintiff has willfully failed to disclose important information from his medical history. Defendants have produced evidence that Plaintiff complained of many of the same injuries and symptoms complained of in this case back in 2003, when he visited a chiropractor about a week after he claimed he was involved in a rollover accident during which he hit his head on a head rest. *Reply* at Exs. J, L, M. Specifically,

Plaintiff complained in 2003 of neck pain, back pain, shoulder pain, pain in his arms and hands, fatigue, headaches, lightheadedness, twitching, shortness of breath, blurred vision and difficulty reading, pain down his legs, and numb, tingling hands. *Id.*

In response to Defendants' First Set of Interrogatories, however, Plaintiff states that at the time of the 2006 crash at issue in this litigation, "I had no significant ongoing symptoms at that time or any disability of which I was aware." *Motion* at Ex. A, p. 7-8. He notes only that at this time, prior to the 2006 crash, "I had aged and was no longer the same person as when I was age 21. I had the normal processes of aging ...." *Id.* at 8. Plaintiff claims that all of the following injuries and symptoms occurred solely as a result of the 2006 crash: neck injury; back injury; pain in shoulders, arms, and hands; right arm goes to sleep like it never did before; fatigue; sleep problems; severe spinal pin; weak legs; dizziness; problems with balance; lack of strength in lower extremity; low back pain; forgetfulness; frequent headaches; vision problems; hip pain; knee pain; stiffness in leg and back; shortness of breath; irritability; depression; and traumatic brain injury. *Id.* at 8-10.

The Court finds little reason, however, for Plaintiff to have lied to his medical providers in 2003, when he indicated that he suffered headaches, lightheadedness, fatigue, shoulder pain, pain in both arms and hands, tingling hands, pain down his legs and other symptoms after hitting his head during a rollover car accident.   FED.R.EVID. 803(4) (providing that statements made for the purpose of medical diagnosis or treatment are routinely accepted by federal courts as reliable); FED.R.EVID. 803(4) advisory committee's note regarding 1972 Proposed Rules (noting that statements as to causation of symptoms are included among those statements accepted as reliable under the Federal Rules of Evidence).

It is simply not plausible that Defendant forgot the severity of his symptoms in 2003 when answering the discovery as to his 2006 accident and resulting injuries. Moreover, there is no evidence to suggest that the 2003 symptoms had completely resolved prior to the 2006 accident. As such, the Court finds it is not reasonable to characterize Plaintiff's failure to disclose his prior head injury as mere oversight. *Archibeque*, 70 F.3d at 1174.

**B.    Defendants Have Been Prejudiced to a Significant Degree.**

At a minimum, Plaintiff has not been truthful about his medical history in discovery. Specifically, Plaintiff failed to advise Defendants of previous head injury and related symptoms detailed in his February 28, 2003 records of treatment by Sandy L. Wolfe and Chiropractic Works, Inc. Plaintiff's failure to disclose casts doubt on his truthfulness throughout this litigation and forces Defendants to go to substantial expense of time and money to independently verify his discovery responses. *See Garcia*, 569 F.3d at 1180 (quoting *Pope*, 138 F.R.D. at 683). Moreover, unlike the *Garcia* case, the prejudice to Defendants in the present case cannot be cured by excluding tainted evidence.

**C.    Plaintiff's Conduct Seriously Interferes with the Judicial Process.**

When confronted with the police report detailing the 2003 rollover, Plaintiff responded by testifying that it was actually his son who was involved. Yet Plaintiff did not disclose the treatment he received, according to his medical records, as a result of that accident. It was left up to Defendants to continue digging, in the face of Plaintiff's denial of involvement, and uncover the medical records relating to Plaintiff's treatment—treatment for a head injury, which Plaintiff had previously testified he had never experienced. In order to resolve the conflicts between the documentary evidence and the affidavits submitted by Plaintiffs, Defendants had to

file the instant motion and the Court was required to hold not one but two hearings on the matter on account of Plaintiff's absence at the first hearing.

Ultimately, when asked to explain the discrepancies in the evidence, Plaintiff pled the Fifth Amendment.  While this is Plaintiff's right, he cannot avoid adverse inferences drawn against him as a result.  *Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976) (holding that "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them").  Nonetheless, Plaintiff's attorneys suggest that Plaintiff may be willing to explain the chiropractor visit two or three months from now, after the relevant statute of limitations—presumably, the statute of limitations applicable to insurance fraud—expires.  In the Court's view, further delay would constitute an unacceptable level of interference with the judicial process.

        **D.**      **Lesser Sanctions Will Not Remedy Plaintiff's Conduct.**

In lieu of dismissal, the Court could require Plaintiff to reimburse Defendants for their costs and fees incurred in the additional discovery, motion drafting, and court time necessary to "resolve" the conflicting evidence.  Such sanctions would be ineffective in the Court's view.  Not only do the conflicts remain unresolved, with the probability that further time and energy will be required on Defendants' parts to come to some resolution, but Defendants must also spend additional time and money seeking to independently corroborate information submitted by Plaintiff in the future.  Because there is no meaningful way to neutralize the prejudice to Defendants as a result of Plaintiff's willful conduct, the Court finds that the harsh remedy of dismissal is appropriate.

**IV.**    **CONCLUSION**

Plaintiff willfully withheld important information concerning prior head injury from the discovery process, causing significant prejudice to Defendants in this litigation.  Plaintiff's conduct has unduly interfered with the judicial process and cast doubt on Plaintiff's submissions throughout this litigation.  Finding that there is no meaningful remedy apart from dismissal, the Court grants Defendants' Motion.

WHEREFORE, *Defendants' Motion to Dismiss Plaintiff's Complaint for Lying in Discovery* (Doc. 56), filed January 13, 2010, is hereby dismissed with prejudice.  Each party will pay its own costs and fees.

Dated March 25, 2010.

s/John Edwards Conway
_____
SENIOR UNITED STATES DISTRICT JUDGE

Counsel for Plaintiff:

Paul D. Barber, Esq.
Albuquerque, NM

Counsel for Defendants:

Kallie D. Kuehl, Esq.
Lance Dean Richards, Esq.
Megan Day Hill, Esq.
Albuquerque, NM